IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN B. GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-11-810 |
| F.J. NASTRI, et al. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

Pending in the above-captioned case is defendants' motion for summary judgment. ECF No. 17. Plaintiff opposes the motion. ECF No. 20 and 21. Also pending are plaintiff's motion for appointment of counsel and to supplement his response to defendants' motion for summary judgment. ECF No. 19 and 22. Plaintiff's motion for appointment of counsel will be denied[1] and his motion to supplement his response will be granted. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Plaintiff states he was charged with violating prison disciplinary rules for which a hearing was held on December 7, 2010, before Hearing Officer Fred Nastri. Before the hearing began, plaintiff claims Nastri tried to induce him into pleading guilty pursuant to an offer made by the prison representative, but plaintiff rejected the offer. Nastri then told plaintiff that the reporting officer's statement was written under the penalty of perjury; that he had a low standard of proof

---

[1] A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No hearing is necessary to the disposition of this case and there are no exceptional circumstances that would warrant the appointment of an attorney to represent plaintiff Dnder §1915(e)(1).

to determine plaintiff's guilt; and that if the plea offer was not accepted by plaintiff he would be found guilty and sanctioned to 365 days of disciplinary segregation. ECF No. 1 at p. 2.

Plaintiff asserts he introduced evidence at the disciplinary hearing that showed there were discrepancies in the reporting officer's statement. Nastri then asked that the reporting officer be contacted so she could testify against plaintiff in the adjustment proceeding, but was told the reporting officer was not available to testify. Plaintiff claims Nastri provided the institutional representative the opportunity to postpone the case on "several occasions" so the reporting officer could be brought to the hearing, but the postponement was declined. ECF No. 1 at p. 3.

Plaintiff claims that despite the evidence he produced showing discrepancies in the reporting officer's account, Nastri found him guilty and sentenced him to 365 days of segregation, as threatened. Plaintiff maintains that Nastri did not fulfill his duties as a hearing officer because he did not remain neutral. He states that he is constitutionally entitled to a hearing officer who is impartial and does not prejudge the guilt of the inmate charged. ECF No. 1 at pp. 3 – 4. Plaintiff claims Maryland regulations defining the duties of an institutional hearing officer establish a liberty interest protected by the due process clause of the Constitution. He states when Nastri did not properly fulfill his duties as defined, plaintiff's Fourteenth Amendment rights were abridged. *Id*. at p. 4. Plaintiff seeks monetary damages as relief.

With respect to Warden Shearin plaintiff asserts the policy Shearin put into place at North Branch Correctional Institution (NBCI) denying use of video surveillance tapes during adjustment hearings violates his constitutional right of equal protection and due process. ECF No. 10. He claims the policy is arbitrary and without penological purpose as the surveillance system in place at NBCI is the most advanced system in the state facilities. He claims the information gathered by the cameras is digitally recorded to a computer hard drive which is

easily accessed by computer. He states each housing unit has computers to access the information and prison officials make use of it on a regular basis to bring disciplinary charges against inmates. *Id*.

With respect to Scott Oakley, executive director of the Inmate Grievance Office (IGO), plaintiff asserts Oakley denied his right of access to the courts when he failed to acknowledge plaintiff's timely appeal of the adjustment hearing proceeding. Plaintiff explains he filed three different complaints with the IGO regarding the circumstances surrounding the adjustment hearing. He filed a complaint against Nastri seeking his suspension from duty; a complaint against Officer Banks for committing perjury on the notice of infraction; and an appeal of the warden's decision upholding the adjustment decision. Plaintiff explains that because Oakley did not acknowledge the two grievances concerning Banks and the appeal, he is precluded from seeking redress for the wrongs done to him, such as bringing a civil action against Banks under the Maryland Tort Claims Act. ECF No. 10 at p. 2.

Defendant asserts that on December 3, 2010, plaintiff received an infraction for violation of institutional rules 116 (misuse, tampering with, damaging, destruction or unauthorized possession of security equipment, tools, property, uniforms, animals, etc.) and 400 (disobeying a direct lawful order). ECF No. 17 at Ex. 1, p. 11. The charges stemmed from an incident occurring at 10:05 a.m. when Officer Banks went to plaintiff's cell to retrieve his "feed-up tray." *Id*. When Banks opened the feed-up slot, plaintiff stated, "your (sic) not closing my slot." Banks then ordered plaintiff to pull his arms back in the cell and let the feed-up slot close, to which plaintiff responded, "Fuck you, I told you before I'm not closing my slot." Plaintiff was given one more chance to comply with the order to pull his arms back into the cell, but he again refused stating "fuck you, I don't care." *Id*. Banks then informed plaintiff he would be receiving

an infraction for delaying the feed-up process and holding his slot.  Because he would not allow his tray to be retrieved, a barrier was placed in front of plaintiff's cell, and the building sergeant was notified of the situation.  *Id.*

Defendant's account of the adjustment hearing differs from plaintiff's account.  Plaintiff represented himself at the hearing and initially requested a copy of the video tape from the tier where the incident took place, claiming it would clear him of all wrongdoing.  The institutional representative, Sgt. Smith, provided a statement written by the Chief of Security stating that use of video of incidents is not permitted because they are security sensitive and NBCI lacks the staff and resources to maintain video evidence of incidents for adjustment cases.  Based on that written policy, plaintiff's request for the video was denied.

Nastri claims he asked plaintiff if he wanted to have the reporting officer present as a witness at the hearing, but plaintiff declined.  Smith, the institutional representative, checked the availability of the officer and determined she was not available to appear, so the hearing proceeded in her absence.  Plaintiff offered no objection.

Plaintiff made a request to review the log book from the tier covering the date of the incident to see if the incident was noted and, if so, whether there was a contradiction between the report and the officer's report.  The log book made no notation regarding plaintiff's tray.  Smith took the position that the absence of a notation did not necessarily mean that the tray was not removed and the officer making the log book entry was unaware of the removal.

Nastri noted that plaintiff's demeanor during the adjustment hearing was anxious and that he continuously interrupted the proceedings stating the officer lied and "none of this happened."  Plaintiff claimed he did not want the feed-up tray, and left it on his feed-up slot.  He alleged Banks ordered him to take the tray, and claimed that he went to sleep as she walked away.

Plaintiff also stated that a search of his cell did not show a tray was found there, contradicting Banks's report.

In reaching his decision, Nastri considered the notice of infraction, plaintiff's demeanor, and Smith's presentation on behalf of the institution. Based on that evidence, Nastri found that plaintiff refused orders to close his feed-up slot, which qualifies as security equipment. Nastri found Banks's report to be more credible, reliable and persuasive than plaintiff's assertion that the entire incident was a "lie." Nastri further found that plaintiff failed to establish that the log book entry, reflecting a cell search that did not include locating a tray in plaintiff's cell, refuted Banks's report. Smith's clarification that the tray may have no longer been in the cell by the time the search took place was found to be more plausible by Nastri. Thus, plaintiff was found guilty and sanctioned to 365 days of disciplinary segregation. Subsequently Warden Shearin modified the adjustment decision on January 5, 2011, reducing the segregation sentence to 180 days.

With regard to plaintiff's grievance filed with the IGO, defendants assert the dismissal of the complaint filed was proper because it was properly construed as an appeal of an adjustment hearing and plaintiff failed to include documentation regarding the adjustment procedures with the complaint. Although he complied with the directive to supply the required documents, his appeal to the Warden was not complete until January 7, 2011, and the IGO complaint had been filed on December 17, 2010. Under the applicable regulations plaintiff is required to exhaust the Warden's review before filing the IGO complaint. COMAR 12.07.01.02(c); ECF No. 17 at Ex. 3. Ultimately plaintiff's IGO complaint was administratively dismissed on March 9, 2011, because the only relief sought was imposition of disciplinary measures against Nastri.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Analysis

<u>Due Process Claim</u>

Plaintiff asserts that the segregation sentence imposed (365 days) and the confiscation of his property resulting from his guilty finding is enough to invoke the procedural protections invoked by the due process clause. ECF No. 20 at Memorandum, pp. 5 - 6. Plaintiff acknowledges that the standard for determining whether a liberty interest exists in this case is that announced by the Supreme Court in *Sandin v. Conner*, 515 U. S. 472, 484 (1995). Because the penalty imposed in plaintiff's case did not involve a curtailment of an entitlement to early release from incarceration, i.e., revocation of good conduct credits, plaintiff is correct in his assertion that *Sandin* governs his case. Under *Sandin* a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Thus, before deciding whether plaintiff is entitled to due process, it must be determined if the conditions under which he was confined constituted an atypical and significant hardship.

The Supreme Court found a liberty interest implicated where inmates in Ohio were assigned to the Ohio State Penitentiary (OSP), a super-maximum security prison where almost all human contact was prohibited and communication between cells was forbidden. Exercise was limited to one hour a day in a small indoor room, and the inmates were exposed to light 24 hours per day. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). The court noted that although the conditions alone were not enough to create a liberty interest, when coupled with the indefinite duration of assignment[2] to the prison and the disqualification of an otherwise eligible

---

[2] The District Court noted that the length of an inmate's stay at the prison was a function of the procedures for review in place. *See Austin v. Wilkinson*, 189 F.Supp.2d 719, 740 (N.D.Ohio 2002). Inmates assigned to the prison could only progress through the various levels after reclassification reviews which were conducted annually and "even inmates with exemplary behavior rarely progress through OSP in less than two years." *Id*.

inmate for parole consideration, the conditions "impose an atypical and significant hardship within the correctional context." *Id.* at 224.

In the instant case plaintiff was given a finite disciplinary segregation sentence and required to forfeit certain items of property. There is no evidence that he was disqualified from parole consideration or otherwise cut off from all human contact. Relinquishment of his property is also not persuasive. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy for the loss of his property. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982). Thus, neither condition resulting from his adjustment conviction constituted atypical conditions of confinement.

Notwithstanding the absence of a liberty interest, the substance of plaintiff's claims lack merit. His claim that Hearing Officer Nastri did not remain neutral because of his alleged statement that plaintiff would be found guilty if he proceeded with a hearing is not enough, alone, to establish an absence of impartiality. Rather, Nastri's explanation that the evidentiary standard for proving plaintiff's guilt of the infraction is relatively low is a correct statement of the law. As long as there is some evidence in the record to support the factual findings of the adjustment decision, a federal court will not review its accuracy. Due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985); *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir.1990). Advising plaintiff that taking a plea agreement would result in a lower sentence was also not evidence of bias. It is frequently the case that a guilty plea is rewarded

with lesser terms of punishment. *See Baker*, 904 F. 2d at 932 (disciplinary process must be preserved as a means of rehabilitation). To the extent Nastri repeatedly suggested that Officer Banks might be called as a witness in the hearing, that suggestion was not necessarily an effort to bolster the institution's case against plaintiff. Indeed, Banks's testimony could have harmed the institution's case. Moreover, the evidence relied on by Nastri to find plaintiff guilty was substantial and more than enough to pass constitutional muster. Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D.Va.1980). Thus, Nastri is entitled to summary judgment in his favor.

Plaintiff's claim against Warden Shearin[3] concerns the policy of not allowing review of video taken from prison tier cameras during adjustment hearings. ECF No. 1 and 20. Prison officials have always been afforded the discretion to disallow use of witnesses or other evidence during disciplinary proceedings if it compromises the security of the institution. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). "Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." *Baker,* 904 F.2d at 931 -932, *citing Ponte v. Real*, 471 U.S. 491 (1985); *Baxter*, 425 U.S. at 321 – 322, and *Wolff*, 418 U.S. at 562—63. A shortage of staff or equipment to accommodate any number of

---

[3] Plaintiff also claims the policy violates equal protection. ECF No. 10. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U. S. 432, 439 (1985) (citation omitted). This case concerns a blanket policy applicable to all inmates and all adjustment hearings. There is no evidence of a suspect classification or a difference in treatment of similarly situated persons. *See Moss v. Clark*, 886 F. 2d 686, 690 (4th Cir. 1989). The Equal Protection Clause does not apply to the claim raised.

daily requests for presentation of security video is sufficient to justify the policy. Additionally, there is no evidence a protected liberty interest has been abridged in this instance because of this policy. Warden Shearin is entitled to summary judgment in his favor.

### Access to Courts

Plaintiff asserts that Oakley improperly dismissed an IGO complaint he filed claiming Banks committed perjury and seeking suspension of Nastri from his duties as an institutional adjustment hearing officer. ECF No. 20. In so doing, plaintiff claims he was denied access to courts for the purpose of litigating tort claims in state court against Banks and Nastri. Additionally, plaintiff asserts that Oakley failed to acknowledge receipt of his IGO complaint challenging the validity of his disciplinary conviction, depriving him of the opportunity to have it overturned. *Id*. at Memorandum, pp. 6 – 7.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), *quoting Lewis*, 518 U.S. at 355. "The requirement that an

inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

Assuming the ability to challenge the validity of an institutional rule violation conviction in cases where a protected liberty interest is at stake is the type of case contemplated by the Supreme Court in *Lewis*, plaintiff's complaint regarding Nastri's decision is not one of those cases. As discussed above, there was no liberty interest involved in plaintiff's case as he did not suffer the loss of any good conduct credits and the penalty imposed was not a significant departure from typical conditions of confinement. While it is troubling to the court that the IGO offered plaintiff no alternative for challenging his adjustment conviction despite evidence that he made a good faith effort to file a timely appeal, the failure to do so did not abridge plaintiff's federal constitutional rights.

To the extent plaintiff disagreed with the disposition of the other complaints he filed with the IGO regarding monetary damages against Nastri and Banks, the sort of "personal injury" claim asserted by those grievances does not fall within the ambit of cases prisoners are constitutionally assured of bringing. Plaintiff has submitted documents and motions filed in other state court cases filed as appeals of Oakley's dismissal of IGO complaints as wholly without merit on its face. In many of the cases, counsel for the Division of Correction conceded that the case should be remanded to the Office of Administrative Hearings for purposes of consideration of the merits of the complaint. ECF No. 21 and 22. The cases provided by plaintiff establish that Oakley made errors in his preliminary review and, under Maryland law, plaintiff was entitled to relief. In the instant case, however, the question is whether plaintiff's federal constitutional rights have been abridged by Oakley's preliminary review. Given the nature of the

claims being pursued, it is clear the dismissal on preliminary review did not violate plaintiff's federal constitutional rights. Plaintiff's inability to sue Nastri and Banks represents "one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. Accordingly, Oakley is entitled to summary judgment in his favor.


___February 15, 2012___                      ___/s/_____  
Date                                                 J. Frederick Motz  
                                                      United States District Judge